# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| FELTON THOMAS, | § | |
| *Plaintiff*, | § § § | |
| v. | § § § | CIVIL ACTION NO. 4:17-CV-00785<br>Judge Mazzant |
| PFG TRANSCO, INC. | § § § | |
| *Defendant*. | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Corrected Motion to Strike or, in the Alternative, to Limit Testimony by Plaintiff's Retained Expert Witnesses (Dkt. #76). Having considered the motion and the relevant pleadings, the Court finds that Defendant's motion should be **GRANTED in part and DENIED in part**.

### BACKGROUND

This case arises from injuries sustained by Plaintiff following a motor vehicle accident. Defendants PFG Transco, Inc., Performance Food Group, Inc. d/b/a Performance Food Group–Customized Distribution, and PFGC, Inc. (Collectively, "PFG") constitute a food delivery company that operates one of the largest commercial trucking fleets in the United States. Plaintiff is a former delivery driver for PFG.

On January 8, 2016, Plaintiff was scheduled to make a commercial delivery for PFG to Fort Smith, Arkansas. Plaintiff fell asleep while driving the vehicle and caused a one-vehicle collision while traveling eastbound on Interstate 40 near Muskogee, Oklahoma. The accident caused Plaintiff's left arm to be pinned beneath the truck. While Plaintiff was unable to vacate the vehicle, a second collision occurred, injuring Plaintiff further.

PFG terminated Plaintiff's employment after determining that the January 8, 2016 accident was preventable, and that Plaintiff was responsible for causing it.  At all relevant times and to the present, PFG is a nonsubscriber to Texas worker's compensation.  PFG does, however, provide wage replacement and medical expense reimbursements to injured employees pursuant to its Texas Injury Benefits Plan.

On October 1, 2020, Defendant filed the present motion (Dkt. #76).  On October 30, 2020, Plaintiff filed his response (Dkt. #81).  On November 6, 2020, Defendant filed its reply (Dkt. #83).

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue.  FED. R. EVID. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury.  509 U.S. 579, 590–93 (1993).  Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable.  *Daubert*, 509 U.S. at 590–91.  A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education."  FED. R. EVID. 702.  Moreover, to be admissible, expert testimony must be "not only relevant but reliable."  *Daubert*, 509 U.S. at 589.  "This gate-keeping obligation applies to all types of expert testimony, not just scientific

testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

Defendant asks this Court to strike the testimony of Plaintiff's three retained expert witnesses—Quinn Burgess ("Burgess"), Dr. William Weber ("Weber"), and Dr. John Swiger ("Swiger").[1] Alternatively, Defendant asks this Court to limit the experts' testimony.

---

[1] The Motion is styled as "Defendants'" Motion. After the filing of the Motion and Plaintiff's Response, the Court granted summary judgment as to two of the three defendants, leaving only PFG Transco, Inc. (Dkt. #85).

Plaintiff argues that all three expert witnesses offer admissible and reliable opinions. As such, Plaintiff asks this Court to deny Defendant's motion.

Defendant does not appear to contest that the experts are qualified to give their respective opinions. Further, Defendant does not appear to contest that the experts' testimony is relevant to issues in the case. With respect to Burgess and Weber, the Court therefore only analyzes the reliability of the opinions.[2]

## I. Reliability of Testimony

"[T]he law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U.S. at 142. When making that reliability determination, courts look to the *Daubert* factors, regardless of whether the testimony is scientific or technical. *See Id.* at 147 (noting that "the basic gatekeeping obligation" found imperative in *Daubert* "applies . . . to all expert testimony"). As such, when expert testimony's "factual basis, data, principles, methods, or their application [is] called sufficiently into question . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Id.* at 149 (quoting *Daubert*, 509 U.S. at 592).

To be reliable, and therefore admissible, under Rule 702 of the Federal Rules of Evidence, expert testimony as to scientific, technical or other specialized area must: (1) assist the trier of fact to understand the evidence or determine a fact issue; (2) be based upon sufficient facts or data; (3) be the product of reliable principles or methods; and (4) have reliably applied the principles and methods to the facts. FED. R. EVID. 702. "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between

---

[2] Defendant's argument in support of striking Swiger flows from the Court finding that Weber's opinion is unreliable. The Court will address Swiger after making a determination on Weber.

4

the facts and conclusion, et. alia." *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 355 (5th Cir. 2007). It is not necessary for the party offering the evidence to prove that the expert's testimony is correct, but the proponent must prove the testimony is reliable. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). Further, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system: 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *U.S. v. 14.38 Acres of Land, More or Less Situated in Leflore Co., State of Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996) (quoting *Daubert*, 509 U.S. at 596).

A witness' experience, studies, and education, combined with a review of the relevant materials can provide a reliable basis for expert testimony. *Perez v. City of Austin*, No. A-07-CA-044 AWA, 2008 WL 1990670, at *10 (W.D. Tex. May 5, 2008); *see also Pipitone*, 288 F.3d at 247 (citing *Kumho*, 526 U.S. at 137 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.")). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) (citing *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 580 (5th Cir. 1985)). However, "[i]n some cases…the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion." *Id.* An expert's opinion is properly excluded when the "expert [brings] to court little more than his credentials and a subjective opinion." *Id.* at 421.

### a. Quinn Burgess

Defendant argues that Burgess's opinion is inadmissible. Specifically, Defendant claims that Burgess's opinions are "utterly groundless, contrary to the evidence, speculative, unreliable, and unhelpful to the jury" (Dkt. #76 at p. 9). Plaintiff claims that "Burgess's opinions are well supported, and his testimony will substantially assist the average person in understanding the case" (Dkt. #81 at p. 10).

Burgess is designated as an expert on Federal Motor Carrier Safety Regulations (FMCSR)/Department of Transportation ("DOT") compliance and regulations. His report states that there were "numerous and varied errors and defects in the HOS reports or logs and [the errors showed] violations of multiple provisions in the Federal Motor Carrier Safety Regulations" (Dkt. #81 at p. 2). Burgess draws the conclusion that Defendant was "dishonest and illegally edited Hours of Service logs in order to misconstrue the idea that they were in fact within compliance of the standards set by the Department of Transportation" (Dkt. #76, Exhibit 1 at p. 3).

After reviewing the Hours of Service logs for Plaintiff and his co-driver, Burgess determined that "there are several obvious discrepancies and questionable differences between the Route Detail Review manifests and the HOS logs" (Dkt. #76, Exhibit 1 at p. 2). Burgess then attributes these discrepancies and differences to Defendant—claiming that Defendant was "attempting to cover up a potential DOT violation" (Dkt. #76, Exhibit 1 at p. 2). Burgess states that the outlined discrepancies "prove that there was illegal editing of the HOS logs" (Dkt. #76, Exhibit 1 at p. 3). Burgess does not definitively state what Defendant's reasons for manipulating the logs are, but he opines that it "was done in order to mislead the Department of Transportation and untrained eyes, possibly to avoid receiving a fine" (Dkt. #76, Exhibit 1 at p. 3). Burgess's overall conclusion is that Defendant illegally altered Plaintiff's HOS logs to cover the fact that

Plaintiff was working over the allowed HOS time—a violation of the regulations set forth by the DOT.

"[N]othing in either *Daubert* or the Federal Rules of Evidence [require] a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "A court may conclude that there is simply to great an analytical gap between the data and the opinion proffered." *Id.* (citing *Turnpin v. Merrell Dow Pharm., Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992), cert. denied, 506 U.S. 826 (1992)). If a court makes this determination, it may properly exclude the testimony as unreliable. *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 783 (N.D. Tex. Nov. 20, 2013).

Burgess considered several documents when preparing his report, including: HOS logs for Plaintiff and his co-driver, dating from December 2015 to January 8, 2016; Route Detail Review/Manifests for Plaintiff and his co-driver for the week of the accident on January 8, 2016; e-mail correspondence between managers and supervisors of Defendant regarding Plaintiff's driver event history; the drive cam video of the rollover on January 8, 2016; and Plaintiff's driver event history. Burgess does not, however, point to any documentation supporting his conclusion that Defendant illegally edited the documents. Burgess uses the discrepancies in the logs and Route Detail manifests to support his claim of deceit—discrepancies for which Defendant offers innocent explanations. Burgess further fails to address any other potential causes for the discrepancies outside of illegal activity by Defendant. Burgess has not provided any support beyond his belief that Defendant acted illegally. Burgess appears to want the Court to accept his opinion as to why the logs were altered as true due to his experience and title—not based upon any real review of the evidence provided. The Court finds that too large an analytical gap exists between the documentation and data relied upon by Burgess and his opinion as to the reasons for

7

the discrepancies. Plaintiff has not proven by a preponderance of the evidence that Burgess's opinion as to why the discrepancies exist is reliable.

The Court agrees with Defendant that "Burgess's opinions that [Defendant] 'deceitfully' and 'illegally' altered Plaintiff's HOS logs must be excluded" (Dkt. #76 at p. 7). As this Court has previously noted, an expert witness's credentials put him in no better position to opine as to Defendant's state of mind than the jury. *Quintel Tech Ltd. v. Huawei Techs. USA, Inc.*, No. 4:15-CV-307, 2018 WL 626355, at *3 (E.D. Tex. Jan. 30, 2018). Further, the Court agrees that Burgess's opinion that Defendant altered Plaintiff's HOS logs is inadmissible. The analytical gap between the documents reviewed by Burgess and that opinion is too great to be reliable. However, the Court notes that Burgess may testify that discrepancies between the logs and Route Detail manifests existed—just not as to *why*. Procedural mechanisms less drastic than exclusion do exist, including cross-examination and the introduction of contrary evidence, to combat the opinion that discrepancies existed. When discussing *why* the discrepancies exist, however, Burgess "[brings] to court little more than his credentials and a subjective opinion." *Viterbo*, 826 F.2d at 421. The Court therefore limits Burgess's testimony to that fact that discrepancies existed between the HOS logs and the Route Detail manifests.

      **b. Dr. William Weber**

Defendant next argues that Weber's opinion is inadmissible. Defendant states that Weber's opinion is "speculative, unreliable, contrary to the available evidence, including the evidence Weber himself relies on and recently obtained surveillance video demonstrating Plaintiff's current physical capacity" (Dkt. #76 at p. 11).

Weber is designated as a vocational specialist.  Weber reaches the ultimate conclusion that "it is very unlikely that [Plaintiff] will be able to obtain and maintain competitive employment" (Dkt. #76, Exhibit 2 at p. 7).

Unlike the challenges to Burgess's testimony, the challenges propounded as to Weber go to the *weight* of his opinion, not the admissibility.  Weber has experience as a certificated vocational evaluator and is highly educated within the realm of rehabilitation counseling.  Weber reviewed reliable sources of information, including hospital and rehabilitation center records; the notice of Fully Favorable decision as Social Security Disability Insurance; a summary of Plaintiff's weekly wages; and a two hour and forty-five-minute telephone vocational rehabilitation appraisal interview of Plaintiff.  From this information, Weber constructed an opinion on the impact of Plaintiff's injury and physical limitations on both vocational potential and vocational options.

All Plaintiff must do is show that Weber's opinion is reliable by a preponderance of the evidence.  *Moore*, 151 F.3d at 276.  The Court is convinced that Plaintiff has done so.  Weber's opinion would assist the trier of fact by offering insight into Plaintiff's loss of earning capacity.  Weber relied upon a multitude of documents and an interview with Plaintiff when formulating his opinion.  Weber's opinion is the product of his specialized knowledge combined with Plaintiff's "past work experience, skills, education, and present functional limitations" (Dkt. #76, Exhibit 2 at p. 7).  In reaching his opinion, Weber also multiplied Plaintiff's average weekly income between October 30, 2015 and January 15, 2016 by forty-eight to reach his estimated annual salary.  He compared his calculation to the Texas Workforce Commission's 2019 median wage for heavy truck drivers in the North Central Workforce Development area.

Defendant points to various admissions in Weber's deposition that contradict his report's overall conclusion.  The admissions—such that there are jobs that a person with more severe

9

injuries than Plaintiff can perform, and nothing is preventing Plaintiff from obtaining a college degree—do not render Weber's opinion unreliable. Rather, the contradictions are those subject to "vigorous cross-examination [and the] presentation of contrary evidence" by Defendant at trial. *See Daubert*, 509 U.S. at 596.

## II. Dr. John Swiger

Defendant contends that Swiger's opinion is also inadmissible. Defendant claims that Swiger "relies entirely on Weber's opinion in order to project a full working lifetime of lost wages" and due to Weber's opinion being "speculative, unreliable, and inadmissible," Swiger's "opinion must be excluded once Weber's opinion is excluded" (Dkt. #76 at p. 11).

The Court declined to exclude Weber's opinion. Because Defendant premises its entire argument on Weber's opinion being excluded, the Court likewise declines to exclude Swiger's opinion.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Corrected Motion to Strike or, in the Alternative, to Limit Testimony by Plaintiff's Retained Expert Witnesses (Dkt. #76) is hereby **GRANTED in part and DENIED in part**.

Quinn Burgess's testimony is limited to the existence of discrepancies between the HOS logs and the Route Detail manifests. Burgess may not testify as to why the discrepancies exist or any perceived wrongdoing on behalf of Defendant with regard to those discrepancies.

**SIGNED this 18th day of November, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE